# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys **NOT** Present for Plaintiffs: | Attorneys **NOT** Present for Defendants: |
|---|---|

**Proceedings:**    IN CHAMBERS (No Proceedings Held)

## I.    INTRODUCTION

For the second time, Plaintiff Celedonia X. Yue has brought a putative class action against Defendant Conseco Life Insurance Company for allegedly raising the monthly cost of insurance ("COI") rates of a large group of policyholders.  Plaintiff moves this Court to certify a California class and issue a preliminary injunction preventing Conseco from implementing the COI rate increase.  For the following reasons, the Court GRANTS[1] Plaintiff's Motion for Preliminary Injunction and Certification of California Class, contingent upon certain modifications to the class definition and the appointment of a second class representative.

## II.    BACKGROUND

### A.    The Policies

The policies at issue in this action are Defendant's Valulife and Valuterm universal life insurance policies ("the policies").  In September of 1995, Plaintiff's mother Ruth S. Yue became an insured under a Valulife policy and named Plaintiff as the beneficiary ("Yue policy") .  The Yue policy permits the insurer to deduct a "cost of insurance charge" from the account each month ("monthly COI charge").  (Dillon Decl. II[2], Exh. A,

---

[1] Dkt. 32.

[2] Counsel for Plaintiff Timothy Dillon submitted two declarations.  The Court will refer to the one submitted in support of Plaintiff's motion (Dkt. 40) as "Dillon Decl. I" and the one in support of Plaintiff's reply (Dkt. 64) as "Dillon Decl. II.".

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

p. 9.)  The monthly COI *charge* is determined by a formula that includes a monthly COI *rate* as one of its variables.  (*Id*.)  When the policies were initially issued, they were accompanied by a chart that reflected the monthly COI rates that applied to each policyholder ("COI rate chart").  (*See id*., p. 4.)

The Yue policy contains language that explains the circumstances under which the insurer can change monthly COI rates:

> Current monthly cost of insurance rates will be determined by the Company based on its expectation as to future mortality experience.  Any change in such rates will apply uniformly to all members of the same age, sex, and premium class.

(*Id*., p. 9.)  The policies of the putative class members in this case have the same or substantially similar language.  As to the merits, the crux of this dispute revolves around whether this language permits Defendant to raise COI rates even when the projected mortality rates, i.e., rates of death, of its policyholders have not increased.

## B.     *Yue I* and the 2002 COI Rate Increase

The Court considered this issue previously in *Yue v. Conseco Life Ins. Co.*, 2011 WL 210943, at *2 (C.D.Cal. Jan. 19, 2011) ("*Yue I*").  In that case, Plaintiff brought a class action against Defendant for announcing in 2002 its intention to increase COI rates for Valulife and Valuterm policies.[3]  Evidence showed that the then-projected losses to Defendant for these policies were much higher than anticipated due to the fact that there were far fewer policy terminations than estimated by the initial policy designers.[4]  *Id.* at *2.  Thus, even though there had been no increase in expected mortality rates, there was still an increase in the projected amount of death benefits that policyholders would claim because a much higher-than-expected number of policies were still in effect.  Taking into account the losses created by the low rate of terminations, Defendant set the COI rates in these policies to increase in their 21st year, using a formula that would eliminate projected losses but not result in any profits for Defendant.  *Id.* at *8.  Defendant argued

---

[3] Defendant abandoned the 2002 COI rate increase after the filing of *Yue I*.  *Id.* at *4.

[4] "Terminations" in this context include voluntary surrenders and involuntary lapses.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

that the rate increase complied with the language of the policies because the phrase "expectation as to future mortality experience" permitted an insurer to increase COI rates based on the anticipated amount of *death benefits* it would have to pay. *Id.* at *9.

On January 19, 2011, this Court granted summary judgment in favor of Plaintiff in *Yue I*, holding that (1) the word "current" in the policy prohibited Defendant from implementing a COI rate increase that would be deferred until a future time, and (2) the phrase "expectation as to future mortality experience" meant "expectation of the 'rate of mortality.'" *Id.* at *9. Under the Court's interpretation, the policies prohibited Defendant from basing the COI rate on persistency rates[5] and the expected amount of death benefits. *Id.* Instead*,* Defendant could base COI rate increases only on the expected rate of deaths.

## C.    The 2011 COI Rate Increase

In November of 2011, Defendant again changed the way it calculated the monthly COI rates of Valulife and Valuterm policies. This time, the change was effective immediately, but only until December 31, 2012, at which point Defendant would recalculate COI rates for the following year. The changes resulted in a COI rate increase for 94% of policyholders and a COI rate decrease for 6% of policyholders. (Prel. Inj. Opp. 4.) Defendant sent letters to affected policyholders in October of 2011 to notify them of this change and attached a new COI rate chart.

Previously, Conseco increased monthly COI rates by adjusting the rates reflected in the original COI rate charts. In other words, in the past, Conseco increased COI rates by multiplying the original COI rate chart for each policyholder by a certain percentage. Conseco's new methodology, however, has no relationship to previous COI rates and dispenses with the original COI rate chart entirely. Conseco instead devised the new COI rates by dividing the policyholders into six classes based on their gender and policy premium class: (1) female non-smokers, (2) male non-smokers, (3) female select policies, (4) male select policies, (5) female standard policies, and (6) male standard policies. (Turner Decl. ¶ 11.) It then calculated the expected mortality rate of each policyholder in those groups according to his or her age at the time of purchasing the policy and the age of his or her policy. (Turner Decl. ¶ 12.) Plaintiff's mother, for example, is a female

---

[5] "Persistency rates" refers to the rate of policies that are still in force. (*See* Gallagher Decl. ¶ 14.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

nonsmoker policyholder who was 70 years old at the time the policy was issued.  The policy is now in its 17th year (she is 87).  (Turner Decl. ¶ 13.)  Of female nonsmoker policyholders who purchased policies at age 70 and are now in their 17th year of the policy, 47.466 per 1000 of those policyholders are expected to die per year.  (Turner Decl. ¶ 13.)  In other words, policyholders like Plaintiff's mother have an expected mortality rate of 47.466 per 1000.

After calculating the expected mortality rate of each policyholder, Conseco then set the annual COI rates for that policyholder to "match" the expected mortality rate. Plaintiff, for example, now has an annual COI rate of $47.466 per $1000 in policy coverage.  Conseco divides the annual COI rate by 12 to get a monthly COI rate (for Plaintiff, $3.9555 per $1000 in policy coverage per month).  The new COI rate chart reflects these monthly rates.  (*See* Compl., Exh. A, p. 4, attached as Exhibit A to this Order.)

The new methodology has caused the COI rates, and consequently the COI charges, of most policyholders to increase.  The monthly COI charge deducted from the accounts of the putative class members is now so high that the members must significantly increase their premium payments to maintain their accounts at the same level as before.  In the case of Plaintiff, for example, to adjust to the new COI rate, she must increase her annual premium payment from $7,890 to $36,517[6] per year.  (Mot. 13; Gallagher Decl. ¶ 44.)  Plaintiff has presented evidence showing that on average, COI rates have increased by 167% for putative class members.  (Mot. 14; Gallagher Decl ¶ 36.)  In turn, the COI charges deducted from these accounts each month are now on average 3.5 times higher.  (*Id.*)

**D.    Expected Mortality Rates**

In *Yue I*, this Court found that overall, expected mortality rates for policyholders had decreased.  2011 WL 210943, at *9.  Under the new methodology, Defendant did not calculate expected mortality rates for policyholders as a whole but instead divided policyholders into six groups.  By doing so, Defendant discovered expected mortality rates were higher for some groups and lower for others.  Even by Defendants'

---

[6] At the hearing, Defendant acknowledged that "the great majority" of Plaintiff's nearly $30,000 premium increase was due to the new COI rate. (Trans. 2/27/12, 23:19-21.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

calculations, however, the vast majority of policyholders still had a decrease in expected mortality rates.  The following is an adaptation of the chart Plaintiff provided to reflect the relationship between the expected mortality rates of each group and the increase in COI charges:

| COLUMN A<br>Group | COLUMN B<br>Percent of Putative Class Members | COLUMN C<br>"Current" Expected Mortality Rate As a Percentage of Initial Expected Mortality Rate | COLUMN D<br>Current COI Charge As a Percentage of Initial COI Charge |
|---|---|---|---|
| Male Nonsmoker | 46.3% | 72% | 316.3% |
| Female Nonsmoker | 33.1% | 90% | 320.9% |
| Male Preferred (Select) | 11.5% | 115% | 429.0% |
| Female Preferred (Select) | 6.4% | 150% | 468.9% |
| Male Smoker (Standard) | 1.5% | 85% | 374.3% |
| Female Smoker (Standard) | 1.2% | 145% | 507.0% |

(Reply, Exh. A.)

The percentages listed in Column C of the above chart were calculated by Defendant.  (*See* Turner Decl. ¶ 11.)  Each percentage in Column C reflects what the expected mortality rate of a group is now ("Current" Expected Mortality Rate) in comparison to what the expected mortality rate was at the time the policies were initially priced ("Initial Expected Morality Rate").  (*Id.*)  Female nonsmokers, for example, currently have an expected mortality rate that is 90% of what their expected mortality rate was at initial pricing.  In other words, the expected mortality rate is now lower for this group.  The percentages listed in Column D are taken from the declaration of Dr. Vincent Patrick Gallagher, an actuary retained by Plaintiff.  (Dkt. 39, ¶ 37, n.25.)  Although Plaintiff's counsel evidently thinks Column D reflects the increase in COI *rates* (Reply, Exh. A), Gallagher's declaration shows that the column reflects the increase in COI *charges*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

According to the chart, 80.9% of putative class members (in the male nonsmoker, female nonsmoker, and male smoker groups) have an expected mortality rate that is lower than it was at the time the policies were priced.  Nonetheless, COI charges for *all* putative class members have more than tripled.

As of the filing of the Reply, 3,364 putative class members had surrendered their policies since the November 2011 announcement.  (Dillon Decl. II ¶ 5.)  At that time, 552 more surrenders were pending.  (*Id.*)

## III.   CLASS CERTIFICATION

### A.     The Class Definition

Plaintiff moves to certify the following California class:

> All California residents who own or owned a Valulife or Valuterm life insurance policy for which the cost of insurance rate change announced by Conseco Life Insurance Company effective November 1, 2011, has resulted or will result in higher COI rates than those applicable under the rate schedule in effect before that date.

(Mot. 29.)  As written, Plaintiff's proposed class definition only includes the 94% of policyholders who have experienced an increase in COI rates.  It also includes former policyholders who surrendered their accounts after the 2011 COI rate increase ("surrendered policyholders").

Fed. R. Civ. P. 23(c)(5) provides, "When appropriate, a class may be divided into subclasses that are each treated as a class under this rule."  In her Reply, Plaintiff alludes to the possibility that in the future, policyholders who surrendered may face additional legal hurdles that will not be relevant to current policyholders.  (Reply 13-16.)  In light of this, and to simplify the class certification analysis, the Court finds it appropriate to divide the proposed class into two subclasses:[7]

---

[7] At the hearing for this motion, Plaintiff's counsel indicated Plaintiff would not object to such a division and acknowledged that in any event, the preliminary injunction could only apply to current policyholders.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

Subclass I: Current Policyholders
All California residents who own a Valulife or Valuterm life insurance policy
for which the cost of insurance rate change announced by Conseco Life
Insurance Company effective November 1, 2011, has resulted or will result in
higher COI rates than those applicable under the rate schedule in effect before
that date.

Subclass II: Surrendered Policyholders
All California residents who, as of November 1, 2011, owned a Valulife or
Valuterm life insurance policy for which the cost of insurance rate change
announced by Conseco Life Insurance Company effective November 1, 2011,
has resulted in higher COI rates than those applicable under the rate schedule
in effect before that date and who thereafter voluntarily surrendered their policy
or policies and later seek to reinstate their policies.

**B.      Legal Standard**

Fed. R. Civ. P. 23 governs the requirements for class certification.  The party
seeking class certification bears the burden of establishing that each of the four
requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met.
*Dukes v. Wal-Mart, Inc.*, 603 F.3d 571, 580 (9th Cir. 2010), *rev'd on other grounds*, 131
S.Ct. 2541 (2011).  A district court may certify a class only if, after "rigorous analysis," it
determines that the party seeking certification has met its burden.  *Wal-Mart Stores, Inc.
v. Dukes*, 131 S.Ct. 2541, 2551 (2011).  In reviewing a motion for class certification, "it
may be necessary for the court to probe behind the pleadings before coming to rest on the
certification question."  *Id.*  (quotation and citation omitted).  The party seeking class
certification "must be prepared to prove that there are *in fact* sufficiently numerous
parties, common questions of law or fact, etc."  *Id.*

At the outset, the Court addresses Defendant's puzzling contention that class
certification must be denied because Plaintiff has failed to prove that every class member
will suffer immediate irreparable injury.  Defendant appears to contend that when a party
moves for class certification and preliminary injunction at the same time, the party must
succeed on the preliminary injunction in order to prevail on class certification.  Defendant
cites no authority to support this novel argument.  The only authorities cited by
Defendant are cases that simply hold that a court cannot enter a preliminary injunction on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

behalf of an entire class absent evidence that virtually all members of the group would be irreparably harmed. *See Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d Cir. 2000); *Mandringues v. World Sav., Inc.*, 2009 WL 160213, at*3-4 (N.D.Cal. Jan. 20, 2009); *Cooper v. TWA Airlines, LLC*, 274 F.Supp.2d 231, 242 (E.D.N.Y. 2003).

The Court has found no case holding that a party is required to prove immediate irreparable injury in order to certify a class. As such, immediate irreparable injury will not be a factor in the Court's class certification analysis.

## C.     Rule 23(a) Requirements

The four requirements of Rule 23(a) require Plaintiff to show: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of class representation. *See* Fed R. Civ. P. 23(a).

### 1.     Numerosity

Defendant does not dispute that Plaintiff has satisfied the numerosity requirement. Indeed, Plaintiff claims that the proposed class includes 11,376 policyholders. (*See* Gallagher Decl. ¶ 11.) Plaintiff also claims that, with respect to Subclass II, at least 3,364 policyholder have surrendered their accounts since the 2011 COI rate increase. (Dillon Decl. II ¶ 5.) These numbers are sufficient to establish numerosity.

### 2.     Commonality

The most heavily disputed element is commonality. To establish commonality, Plaintiff must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The claims of the proposed class members "must depend upon a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S.Ct. at 2551. "What matters to class certification . . . is not the raising of common 'questions' -- even in droves -- but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (quotations and citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

In this case, all proposed class members were owners of life insurance policies that contained uniform language. All were subjected to a COI rate increase that was calculated according to one methodology. Nonetheless, Defendant argues that (1) individualized issues defeat commonality, and (2) Plaintiff has failed to demonstrate a common injury. As the Court will discuss, these arguments lack merit.

> a.   *Plaintiff's claims do not require proof of subjective understanding*

Defendant's primary argument is that Plaintiff's claims will require this Court to consider the subjective understanding of each class member at the time each policy was issued. (Opp. Class Cert. 14-17.) Evidence of that subjective understanding would include what conversations the members had with their sales agents, what illustrations the members were shown, what their annual statements said, and so on, evidence that Defendant contends would be individualized. (*Id.* at 14.)

The Court does not agree that individualized issues dominate Plaintiff's claims. Plaintiff has not alleged fraud, misrepresentation, or any other claims or theories that would require a showing of inducement or reliance. Instead, Plaintiff has alleged claims against Defendant for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing ("bad faith"), and (3) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. Contrary to Defendant's assertion, it is unlikely that the Court will have to consider the subjective understanding of any class member to assess the merits of these three claims.

Plaintiff's breach of contract claim, for example, requires the Court to interpret each provision by determining "the mutual intention of the contracting parties at the time the contract was formed." *London Market Insurers v. Superior Court*, 146 Cal.App.4th 648, 656 (2007); *see* Cal. Civ. Code § 1636. Under California law, courts are to ascertain that intention, "solely from the written contract if possible, but [may] also consider the circumstances under which the contract was made and the matter to which it relates." *Id.* If a provision is ambiguous, courts "consider not only the face of the contract but also any extrinsic evidence that supports a reasonable interpretation." *Id.* An interpretation is reasonable "only if it is consistent with the *objectively reasonable expectations* of the insured." *Id.* (emphasis added). In the context of insurance policies, the California Supreme Court has noted, "It is not our role to speculate on the policyholder's abstract

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

expectations, but rather to consider reasonable expectations defined by the insurer's policy language." *Haynes v. Farmers Ins. Exchange*, 32 Cal.4th 1198, 1214 (2004) (quotations and citation omitted). Thus, even assuming that the contractual provision at issue were ambiguous, the subjective expectations of an insured class member would have little if any bearing on the breach of contract analysis.

Similarly, the question of whether Defendant breached the implied covenant of good faith and fair dealing is also determined by an objective standard. "The essence of the good faith covenant is objectively reasonable conduct." *Lazar v. Hertz Corp.*, 143 Cal.App.3d 128, 141, 191 Cal.Rptr. 849, 857 (1983). Accordingly, in *Lazar*, a California Court of Appeal found that the trial court had erred in assuming that "reliance of the class members was an element of that claim." *Id.* "Reliance by the customer on [defendant's] good faith is not an element because inducement is not the issue." *Id.*

Finally, although a plaintiff may pursue a UCL claim on a theory of deception or reliance, she is not required to do so. *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) ("[R]elief under the UCL is available without individualized proof of deception, reliance and injury.") (quoting *In re Tobacco II Cases*, 46 Cal.4th 298, 320 (2009)). The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." *McKell v. Washington Mut., Inc.*, 142 Cal.App.4th 1457, 1470 (2006) (quoting Cal. Bus. & Prof. Code § 17200). Because the statute is disjunctive, "a business practice need only meet one of the three criteria to be considered unfair competition." *Id.* at 1471. In her motion papers, Plaintiff clarifies that she is pursuing her UCL claim under the "unlawful" and "unfair" prongs. She argues that the 2011 COI rate increase was "unlawful" because it violated this Court's order in *Yue I*. She also argues the rate increase was "unfair" because (1) Defendant increased COI rates to eliminate expected future losses despite the fact that the policies were initially designed, priced, and sold with those expected losses in mind, and (2) the proposed class members suffered a substantial consumer injury that did not benefit them and could not have reasonably been avoided. (Mot. 20-22.) These theories do not require proof of deception or inducement. Nor does Defendant cite any cases directly holding that subjective understanding is required for Plaintiff's breach of contract, bad faith, and UCL claims. Instead, Defendant only argues *as if* Plaintiff presented deception or inducement claims, even though Plaintiff has not done so. (See Class Cert Opp. 16-17.)

In that regard, Defendant's reliance on *Kaldenbach v. Mutual of Omaha Life Ins.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

*Co.*, 178 Cal.App.4th 830 (2009) is misplaced.  The plaintiff in that case alleged a UCL claim against an insurer under the theory that he had been "misled" by illustrations when he purchased his policy.  *Id.* at 836.  The California Court of Appeal held that the case lacked commonality because it would require an individualized assessment of what materials had been given to class members.  It is true that, like the plaintiff in *Kaldenbach*, Plaintiff in this case also mentions the illustrations and information she received when purchasing her policy.  Plaintiff does not contend, however, that she was misled.  Rather, her contention is that the illustrations she was shown accurately reflected the way the policies were intended to perform, but that in the November 2011 announcement, Defendant increased COI rates in a manner inconsistent with the policies' original design.  (Mot. 5-6.)  The mere fact that Plaintiff in this case discussed illustrations does not change the nature of her claims in a manner that makes *Kaldenbach* controlling.

Because Plaintiff's breach of contract, bad faith, and UCL claims do not require proof of subjective understanding, it is unlikely that the Court will have to examine individualized evidence to assess them on the merits.

> *b.    Plaintiff has demonstrated a common injury to class members.*

Defendant argues that Plaintiff cannot establish commonality for another reason -- Plaintiff cannot prove there was a common injury to class members.  In *Dukes*, the Supreme Court held, "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'  This does not mean merely that they have all suffered a violation of the same provision of law."  *Dukes*, 131 S.Ct. at 2551 (quotations and citation omitted).

Although Plaintiff has provided evidence that COI charges have significantly increased for all proposed class members, Defendant contends that some policyholders will not suffer an injury from the increase.  (Opp. Class Cert. 15.)  Defendant's theory is as follows: about 75% of class members can continue paying the same level of premium that they have been paying without risk of their Policies lapsing for at least three years.  This is because the increased COI charge will simply be deducted from their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

"accumulation accounts."[8]  A policy will not lapse until the accumulation account is depleted.  While some policies are designed so that the beneficiaries receive proceeds from the accumulation account in addition to the death benefit, about 70% of the proposed class members' policies are designed so that beneficiaries receive *only* the death benefit, regardless of what is in the accumulation account.  (*Id.*)  If these policyholders decided to continue paying the old premium rate and happened to die before their policies lapsed, their beneficiaries would still get the full death benefit, notwithstanding the depletion of their accumulation accounts from the increased COI charge.  (*Id.* at 9.)  Thus, Defendant claims that the Court would have to consider individualized evidence to determine whether a policyholder will suffer an injury.  (*Id.* at 15.)

Defendant attempts to conjure up complicated, individualized issues where none exist.  The 2011 monthly COI rate increase applied to all putative class members and at the very least tripled their monthly COI charges.  These monthly COI charges are already being deducted from the accumulation accounts of each and every class member.  If the COI rate increase is found to be contrary to the terms of the policies, all class members will have suffered the injury of having had an unlawfully increased COI charge deducted from their accumulation accounts.  There is no question that such charge either reduces the value of the proposed class members' accumulation accounts or forces them to increase their premium payments.  Even policies that do not include accumulation account proceeds with death benefits are less valuable because, unless those policyholders increase their premiums, those policies will lapse much sooner than before.  There is nothing speculative about this common injury.

The fundamental question at the heart of this action is, "Does the 'cost of insurance' language in Defendant's standardized Valulife and Valuterm insurance policies permit Defendant to implement the 2011 increase to monthly COI rates?"  The answer to this common question definitely will "resolve an issue that is central to the validity of each one of the claims in one stroke."  *See Dukes*, 131 S.Ct. at 2551.  Because Plaintiff has demonstrated common questions of fact and law and established a common injury, Plaintiff has satisfied the commonality requirement.

---

[8] Each policyholder's cash "accumulation account" contains the money that is left over from premium payments after Defendant deducts the monthly COI charge and expense charge.  The money in the accumulation account earns interest on a tax-deferred basis.  (Class Cert. Opp. 7.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

　　　3.　　Typicality

　　　Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992) (citation omitted). According to the Ninth Circuit, "[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* (quotation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (internal quotation marks omitted). "[C]lass certification is inappropriate where the putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Id.* (citing cases). The Ninth Circuit interprets the typicality requirement permissively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

　　　Plaintiff is a current policyholder who has been subjected to the 2011 COI rate increase. Her injury is similar to that of all proposed class members in that she has seen her monthly COI charge increase by over three times its previous amount. She has not, however, surrendered her policy and will not be seeking the additional remedy of reinstatement. Thus, the Court finds that although Plaintiff's claims are typical of the members in Subclass I (current policyholders), her claims are not typical of the members in Subclass II (surrendered policyholders). If Plaintiff wishes to move forward with a class action that includes the members of Subclass II, Plaintiff must find a representative whose claims are typical of that subclass.

　　　Defendant argues that Plaintiff's claims are not typical because she may have received different illustrations and information than the other class members received. (Class Cert. Opp. 18-19.) As this Court has already discussed in its discussion of commonality, Plaintiff's subjective understanding is not an element of her breach of contract, bad faith, and UCL claims. Thus, the Court disregards this argument.

　　　4.　　Adequacy

　　　The remaining prerequisite of Rule 23(a) is that the "representative parties will

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020 (internal quotation marks omitted).

As the parties are aware, this Court previously found in *Yue I* that Plaintiff was an adequate class representative. The Court finds no reason to depart from that conclusion. Plaintiff and her counsel do not appear to have any conflicts with the proposed class, and Defendant does not contend that they do. Defendant only argues again that Plaintiff is an inadequate class representative because she lacks commonality, an argument the Court has already rejected.

Thus, Plaintiff has satisfied all of the requirements of Rule 23(a).

**D.     Rule 23(b)(2) Requirements**

Plaintiff must also establish that the requirements of one of the three subdivisions of Rule 23(b) are met. Plaintiff seeks certification under Rule 23(b)(2).

Certification under Rule 23(b)(2) is appropriate where the opposing party "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) "is designed for all-or-none cases in which final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate." *Jefferson v. Ingersoll Intern. Inc.*, 195 F.3d 894, 897 (7th Cir. 1999). An alternative prayer for money damages does not necessarily preclude Rule (b)(2) certification. *Linney v. Cellular Alaska Pshp.*, 151 F.3d 1234, 1240) (9th Cir. 1998). However, because members of a Rule 23(b)(2) class "do not have the right to opt-out . . . if the action involves 'substantial monetary damages,' maintenance of a mandatory Rule 23(b)(2) class is inappropriate and violative of minimum due process" in such situations. *Molski v. Gleich*, 307 F.3d 1155, 1165 (9th Cir. 2002).

In her Complaint, Plaintiff seeks exclusively injunctive and declaratory relief that would prevent Defendant from implementing the 2011 COI rate increase. Any monetary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

relief sought by the class, such as the return of any additional COI charges deducted after the rate change, would be incidental to the equitable relief sought by Plaintiff. As this Court noted in *Yue I*:

> [C]lass certification is appropriate because Defendant has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. *See* Fed. R. Civ. P. 23(b)(2). Conseco treated all of the Policies alike in deciding to implement the . . . cost of insurance increase. All of the Valulife and Valuterm Policies contain identical cost of insurance language that requires the company to determine monthly cost of insurance rates "based upon its expectation as to future mortality experience." . . . . Conseco allegedly decided to uniformly increase the cost of insurance rates for all of the Policies . . . . It is therefore appropriate for the Court to evaluate the claims on behalf of the entire class as a whole, to determine whether these increases are permissible under the Policies and, if the increases are not justified, to order injunctive or declaratory relief applicable to the entire class of Policyholders.

CV 08-1506 AHM (SHx), Dkt. 98, p. 9. The above reasons remain unchanged in this case. In addition, the strictures of *Dukes*, *supra*, are not violated by this determination, for "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." 131 S.Ct. at 2557. That is the case here; the injunction would provide the requisite relief to all the class members.

Because Plaintiff has met all of the Rule 23 requirements, the Court GRANTS Plaintiff's motion for class certification. The Court certifies the two subclasses defined above, conditioned upon Plaintiff appointing a second class representative to represent the subclass of surrendered policyholders.

## IV.   PRELIMINARY INJUNCTION

Along with class certification, Plaintiff also seeks a preliminary injunction to prevent Defendant from implementing the 2011 COI rate increase. A preliminary injunction is appropriate to "preserve the status quo pending a determination of the action on the merits." *Chalk v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 840 F.2d 701, 704 (9th Cir. 1988). A plaintiff seeking a preliminary injunction must establish the following

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

four factors: (1) that she is likely to succeed on the merits, (2) that she is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Irreparable harm must be *likely*, not just possible. *Id.* at 21. Under the Ninth Circuit's sliding scale approach, the four factors of the preliminary injunction test are balanced so that a stronger showing of one factor may offset a weaker showing of another. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

At the February 27 hearing, Plaintiff conceded that she was not seeking a preliminary injunction for surrendered policyholders. (*See* Trans. 2/27/12, 33:4-5.) The Court will therefore limit its preliminary injunction analysis to to the members of Subclass I.

## A.    Plaintiff Has Satisfied the Four *Winter* Factors

### 1.    Plaintiff is likely to succeed on the merits of her breach of contract claim.

When interpreting an insurance policy, courts must "consider the contract as a whole and interpret the language in context, rather than interpret a provision in isolation." *London Market Insurers v. Superior Court*, 146 Cal.App.4th 648, 656 (Cal.App. 2 Dist. 2007); *see* Civ.Code, § 1641. Courts are to "interpret words in accordance with their ordinary and popular sense, unless the words are used in a technical sense or a special meaning is given to them by usage." *Id.*; *see* Civ.Code, § 1644.

The policies state, "Current monthly cost of insurance rates will be determined by the Company based on its expectation as to future mortality experience" ("COI provision").[9] This Court has already found that the phrase "expectation as to future mortality experience" means "expectation of the 'rate of mortality.'" *Yue I*, 2011 WL 210943, at *9.

Plaintiff argues that the plain meaning of the COI provision is that (1) Defendant

---

[9] Although there may be slight variations in this language among the policies, neither party argues that the variations are material.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

can only increase monthly COI rates if the expected mortality rates of policyholders increases, and (2) the increase in COI rates must be proportionate to the increase in the expected rate of mortality.  In contrast, Defendant argues that it may adjust COI rates at any time as long as expected mortality rates serve as a factor in determining the COI rate.  Defendant claims that its new methodology complies with the policy because the new annual COI rates "match" the expected mortality rates, i.e., a policyholder who has an expected mortality rate of 47.466 out of 1000 now has an annual COI rate of $47.466 per $1000 of policy coverage.[10]

   The Court finds it likely that Plaintiff will succeed in proving that Defendant's interpretation conflicts with the plain meaning of the COI provision.  As the parties have noted, the COI provision states that the COI rate will be "*based on*" projected rates of mortality.  Defendant appears to argue that the COI rate can be considered "based on" expected mortality rates long as expected mortality rates constitute *one factor* in determining the COI rates.  Defendant's interpretation conflicts, however, with the ordinary and popular meaning of the phrase "based on."

   "In order to determine the ordinary meaning of a term, courts routinely rely on dictionary definitions."  *U.S. v. Havelock*, 664 F.3d 1284, 1293 (9th Cir. 2012).  Webster's Dictionary defines the verb form of the word "base" as "to find a base or basis for -- usu. used with *on* or *upon.*"  *Merriam-Webster's Collegiate Dictionary* 94-95 (10th ed. 1996).  The noun form of the word "base" is defined *inter alia* as "the *fundamental* part of something" (emphasis added).  *Id.*  Similarly, the word "basis" is defined as "the bottom of something considered as its *foundation*," or "the *principal component* of something"  (emphasis added).  *Id.*  The dictionary definition indicates that when a number is "based on" a variable, that variable is the *principal* or *fundamental* factor in determining the number, not merely one factor among many.  At minimum, the phrase "based on," in its ordinary and popular sense, means that there must be a significant relationship between a number and any change in a variable that number is "based on," particularly when only one variable is mentioned.  If the variable changes one way and the number does not reflect that change, then the Court must infer that the number is no longer "based on" that variable -- that, instead, the principal factor the number is "based on" is something else.  If,  for example, an employer provided that an employee's

---

[10] Defendant apparently believes it is "matching" the expected mortality rate by multiplying it by $1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

commission is "based on" the number of sales he makes, but the employee's commission decreases even though his sales have increased, it is obvious that his commission is not really "based on" his sales.

Of course, a number does not have to change in the same direction as a variable in order to be "based on" it. If a contract said, for example, "The price of coats will be determined based on the expected temperature of the weather," general knowledge about weather and demand for coats would lead a reasonable person to interpret this provision to mean that the higher the temperature, the lower the price of coats. Thus, in order to determine how a number and a variable can reasonably be expected to relate to each other, the Court must look at the words in context.

In this case, the "number" is the monthly COI rate, and the "variable" is the expected rate of mortality. In the context of life insurance, it is generally known that the higher the mortality rate of policyholders, the more an insurer must pay in death benefits. It is therefore reasonable to interpret the COI provision to mean that if expected mortality rates increase, monthly COI rates also would increase, to cover the additional projected losses caused by the increased mortalities to the insurer. Conversely, if expected mortality rates decreased, there could not be an increase in COI rates if they were "based on" expected mortality rates.

Defendant points out that the COI provision refers only to "*future* mortality experience," and that Plaintiff's interpretation "tether[s] Conseco's ability to determine COI rates to the past." (Prel. Inj. Opp. 7.) By taking into account "past" expected mortality rates, Defendant contends that Plaintiff "engraft[s] a new term on the Policies." (*Id.*) The Court disagrees. The phrase "based on" is what incorporates past expected mortality rates. As the Court has already discussed, when a number is said to be "based on" a variable, the phrase "based on" indicates that the number will change in accordance with changes in that variable. In order to determine how a variable has *changed*, one must compare what that variable was in the past to what it is now. Accordingly, in order to "base" COI rights on expected mortality rates, Conseco must consider the relationship between current and past expected mortality rates and determine how those rates have changed. Because the phrase "based on" necessitates comparison to past rates, Plaintiff's interpretation does not add any new terms.

In this case, the Court finds that it is not likely that Defendant can establish the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

2011 COI rate increase was "based on" expected mortality rates, for two reasons.  First, monthly COI rates increased for the 80.9% of policyholders who had lower expected mortality rates.  Second, the new COI rate methodology resulted in a COI rate increase for *all* proposed class members, *regardless* of whether the expected mortality rate for their class had increased or decreased.  As a matter of logic, these results contradict Defendant's claim that it "determined COI rates based *exclusively* on its expected future 'rate of death.'" (*See* Prel. Inj. Opp. 5.)  Instead, the Court is likely to conclude that the COI rate increase was based on something else -- in this case, Defendant's projected losses from the policies.

        Supporting this conclusion are two factors.  First, evidence shows that the new COI rates eliminated the losses Defendant would otherwise have incurred from these policies. ("Deposition of Turner," Dillon Decl. I, Exh. A, at 184.)  Although Defendant has made clear that its expected profits are still lower than expected even under the new COI rate (Turner Decl. ¶ 50), it does not dispute that the 2011 COI rate increase eliminated its losses.  By claiming that the new COI rates were based "exclusively" on expected mortality rates, Defendant asks this Court to believe that the effect on Defendant's losses is a coincidence -- that "matching" the COI rates to expected mortality rates "happened" to eliminate Defendant's losses.  The Court finds it unlikely that Defendant came to this result by chance.[11]

        Second, counsel for Defendant made several statements during the February 27, 2012, hearing on this motion suggesting that Defendant's new methodology was based

_____

        [11] This is especially so in light of the fact that Defendant never adequately explains why it chose to multiply expected mortality rates by a factor of 1 in order to calculate the new COI rates.  In his Supplemental Declaration, Gregory Turner, the Vice President of one of Defendant's affiliates, states, "COI rates could be set for a period of time at 1.1 times mortality rate expectations, or .97 times mortality rate expectations, or at 1.06 times expected mortality (death benefit) payments. . . .  All that was required, however, was that COI rates be 'based on' future expected mortality experience."  (Supp. Turner Decl. ¶ 5 (emphasis in original).)  By Defendant's own admission, under its interpretation, it could have multiplied the expected mortality rate by any amount, such as 50 or 5.  Despite Defendant's belief that any of these multipliers would still have made the new COI rate "based on" expected mortality rates, Defendant chose the multiplier of 1, a number that coincidentally eliminated their losses and even generated some profit.  (*See* Dillon Decl. I, Exh. A, p. 21.)  Defendant's explanation is that it believed a multiplier of 1 "matched" expected mortality rates, but the Court does not understand why that multiplier would be considered "matching" simply because it would allow an expected mortality rate of 47.466/1000 to look visually similar to an annual COI rate of $47.466/$1000.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

more on projected losses than expected mortality rates.  Counsel stated, for example, that "it's not atypical at all for insurance companies, if policies turn out to be less profitable than projected, to make adjustments." (Trans. 2/27/12, 9:1-3.)  Later, when the Court asked Defendant to explain the counterintuitive relationship between the increased COI rates and the decrease in expected mortality rates, counsel offered the following chart:

| POLICY | POLICY DESIGN | PROFIT/LOSS MORTALITY | ADJUSTMENT |
|---|---|---|---|
| Yue Policy | Profit beginning | Huge losses Mortality improves | Adust COI up |
| Yue Converse | Losses beginning | Huge profits Mortality worsens | Adjust COI down |

Defendant offered the above chart to argue that when an insurer enjoyed huge profits in spite of increased mortality rates, a reasonable policyholder could expect COI rates to decrease.  Thus, Defendant claims, a reasonable policyholder would also expect the opposite -- that when mortality rates decrease, COI rates would increase if the insurer experienced huge losses.  The question before this Court, however, is not what a reasonable policyholder could expect in the abstract but what a reasonable policyholder could expect given the language in the policies.  The policies state that COI rates would be "based on" expected mortality rates.  Instead, the COI rates in the above chart are clearly based on the amount of losses or profits to the insurer.

In *Yue I*, this Court held:

By Conseco's own admission, under its interpretation of the Policies, the Policies "place *no limit whatsoever* on what Conseco may consider as it forms its expectation of future mortality experience.  Or, to put it another way, Conseco's expectations as to Policy lapses and persistency impact its expectation of whether it will obtain mortality profits or incur mortality losses in the future." Opp'n at 18.  (emphasis added).  That interpretation, however, is contrary to the plain language of the Policies.

Although the words at issue in this case ("based on") are different than the words

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

at issue in *Yue I* ("expectation as to future mortality experience"), Defendant's position remains similar.  Under Defendant's interpretation, "[a]n infinite number of ways exist to 'base' COI rates on our expectation as to future mortality experience."  (Supp. Turner Decl. ¶ 5 (emphasis in original).)  No reasonable policyholder could expect the plain language of the COI provision as permitting Defendant to change the COI rate in an "infinite" number of ways.  Thus, it is likely that Defendant breached the terms of the policies by raising COI rates when, even by Defendant's calculations, the expected rates of mortality for most policyholders have decreased.[12]

As such, the Court finds that Plaintiff is likely to succeed on her breach of contract claim.  Because Plaintiff can sustain a preliminary injunction based on the breach of contract claim alone, the Court need not assess the merits of the bad faith and UCL claims.

---

[12] The Court does not at this time address whether changes in monthly COI rates must be directly proportionate to changes in expected mortality rates.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|----------|----------------------|------|---------------|

| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY |
|-------|----------------------------------------------------|

      2.    <u>Current policyholders face imminent irreparable injury</u>.

      The Court finds that without a preliminary injunction, policyholders are likely to suffer imminent irreparable harm.  It is common knowledge that people purchase insurance policies for "security" and "peace of mind."  *See Weinberger v. Wiesenfeld*, 420 U.S. 636, 642 (1975) (comparing social security benefits to insurance because they provide "security" and"peace of mind").  In the context of life insurance, the "security" being purchased is the knowledge that the policies' designated beneficiaries will be left with some degree of financial support when the insured passes away.  When policyholders face large, unanticipated increases in charges, the "peace of mind" they paid for is irreparably lost -- instead, they are left with stress, anxiety, and uncertainty regarding the state of their life insurance.

      Plaintiff has provided evidence that the COI rate increase has resulted in COI charges increasing by more than three times for all class members.  (Gallagher Decl. ¶ 37, n.25.)  Worse, because Defendant has informed policyholders that it will reconsider COI rates annually, class members must also risk the possibility that his or her COI rate will change every year in an "infinite" number of ways.  This leaves policyholders with no way of predicting the cost of COI charges and thereby no way of knowing whether they will be able to afford carrying their policies to maturity.  Under these circumstances, class members must decide now whether to submit to unpredictable COI rates or to surrender policies that they have been investing in for more than a decade.[13]  They are forced to make this decision in spite of the fact that the COI rate increase may ultimately be deemed invalid.  Indeed, evidence shows that almost 4000 policyholders have already made the choice to surrender since the 2011 COI rate increase.  (Dillon Decl. II, ¶ 4.)

      If a policyholder surrenders her account while this case is pending, she may never be made whole, even if Plaintiff is ultimately successful in this case.  Some surrendered policyholders may pass away without life insurance, resulting in their having suffered an emotional injury -- failure to provide for their loved ones -- that no monetary award could ever compensate.  Others may be eligible for reinstatement but may have purchased a policy with another insurer, making it difficult to calculate damages.  Still others may have invested their accumulation accounts elsewhere, making reinstatement impossible.

---

      [13] It is undisputed that, at minimum, each class member has been paying premiums for at least 13 years.  (Mot. 3.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

These are but some of the irreparable injuries that may result.  The Court recognizes that the aforementioned injuries are speculative, but these are not the injuries that warrant a preliminary injunction here.  The *immediate* irreparable threat common to all class members is that without a preliminary injunction, they will be deprived of the opportunity to make an informed decision that would help them *avoid* the above scenarios.  In other words, if Plaintiff is correct, policyholders are currently being forced to make a choice that they should not have to consider in the first place.  Monetary damages cannot turn back time and return to any class member the right to be free from being compelled to make a choice that would prevent irreparable harm.  It is precisely this type of situation that warrants preserving the status quo until a decision is made on the merits.

Defendant argues that most class members can continue paying the same premiums for several years before falling into lapse.  Apart from the fact that this is not true for at least some class members, the Court fails to see how this option is relevant.  The threat of lapse is not the issue.  The issue is that policyholders currently lack information they need in order to make informed financial decisions about their life insurance options.  If the 2011 COI rate increase is deemed valid, many policyholders may wish to cut their losses and surrender their accounts.  If it is deemed invalid, many policyholders may wish to keep their accounts.  Regardless, without a preliminary injunction, class members will be forced to make a choice while the polices are in a legal limbo.  The resulting uncertainty, stress, and inability to plan are sufficient to constitute irreparable harm.

3.      The balance of hardships falls in favor of the class.

Before issuing a preliminary injunction, the Court has a duty "to balance the interests of all parties and weigh the damage to each."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009).

Plaintiff has produced evidence that all class members would have to triple their premium payments (at minimum) to maintain the value of their policies and would face irreparable uncertainty absent a preliminary injunction.  The fact that over 3000 putative class members have surrendered their policies since November makes it likely that the 2011 COI rate increase is imposing a significant financial burden on policyholders.  (Dillon Decl. II ¶ 5.)  Meanwhile, Defendant has provided no evidence that it would suffer hardship in the event of a preliminary injunction.  Instead, it argues Plaintiff has failed to establish hardship because COI rates have decreased for 6% of putative class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

members. (Prel. Inj. Opp. 25.) This argument is meritless -- Plaintiff's proposed class definition clearly excludes policyholders whose COI rates have decreased. Thus, the balance of hardships favors Plaintiff.

> 4.    The public interest factor slightly favors the class.

"When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis rather than one that favor[s] [granting or] denying the preliminary injunction." *Id.* at 1138-39 (quotations and citation omitted). Because this case revolves around a contractual dispute between private parties, its effect on the public interest is minimal. Nonetheless, courts have recognized that the public has an interest in regulating insurance companies and enforcing contractual obligations. *See, e.g., Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 820 (1979) ("The insurers' obligations are rooted in their status as purveyors of a vital service labeled quasi-public in nature."); *H & R Block Tax Services LLC v. Kutzman*, 681 F.Supp.2d 1248, 1253 (D.Mont. 2010) ("The public has an interest in valid contracts being upheld."). Moreover, this is a class action involving standardized insurance policies that may contain language similar to the language in other insurance policies. As such, the public has a slight interest in the issuance of an injunction.

Regardless, Plaintiff has firmly established the other three *Winter* factors. Thus, the Court finds that a preliminary injunction is warranted.

**B.    The Court Waives the Bond Requirement**

Defendant notes in a conclusory footnote that in the event that the Court issues a preliminary injunction, Plaintiff should be required to post a bond. (Prel. Inj. Opp. 25, n.29.) Fed. R. Civ. P. 65(c) provides that "the court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." With respect to the bond requirement, the Ninth Circuit has held:

> Despite the seemingly mandatory language, "Rule 65(c) invests the district court 'with discretion as to the amount of security required, *if any*.' "

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|----------|----------------------|------|---------------|

| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY |
|-------|-----------------------------------------------------|

> *Jorgensen v. Cassiday,* 320 F.3d 906, 919 (9th Cir.2003) (quoting *Barahona–Gomez v. Reno,* 167 F.3d 1228, 1237 (9th Cir.1999)). In particular, "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.*

*Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).

Because there is a strong likelihood that the 2011 COI rate increase breaches the terms of the policies, the Court finds that there is little likelihood that Defendant will suffer harm from the preliminary injunction. Indeed, Defendant has not even argued how it would be harmed in the absence of a bond. At the hearing, defense counsel noted that Conseco has an interest in staying solvent, but Defendant has submitted no proof that Defendant would face insolvency without the 2011 COI rate increase. Moreover, the Court notes that in *Yue I*, the disputed COI rate increase was not to take effect for several years, suggesting that Defendant is not under immediate threat of insolvency. Thus, the Court exercises its discretion and waives the bond requirement.

/ / /

/ / /

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-9506 AHM (SHx) | Date | April 2, 2012 |
|---|---|---|---|
| Title | CELEDONIA X. YUE v. CONSECO LIFE INSURANCE COMPANY | | |

## IV.    CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's Motion for Preliminary Injunction and Certification of California Class.  The Court divides the proposed class into two subclasses and certifies Subclass I (current policyholders).  The Court conditionally certifies Subclass II (surrendered policyholders), provided that Plaintiff files within 21 days of the date of this order a motion to add as a named plaintiff a class member whose claims are typical of those in Subclass II.  The parties are ordered to meet and confer prior to Plaintiff's filing of such a motion and are encouraged to come to an agreement regarding an appropriate Subclass II representative.  Defendant is preliminarily enjoined from imposing the 2011 COI rate increase on the members of Subclass I until and unless the Court otherwise orders.

_____ : _____

Initials of Preparer            SMO

**Exhibit A**

**Female NonSmoker Select Current Monthly Cost of Insurance Rates Per $1,000***

| Issue Age | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | Attained Age |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 18 | 0.0414 | 0.0422 | 0.0448 | 0.0465 | 0.0500 | 0.0531 | 0.0545 | 0.0572 | 0.0580 | 0.0592 | 0.0606 | 0.0627 | 0.0653 | 0.0723 | 43 |
| 19 | 0.0422 | 0.0439 | 0.0476 | 0.0500 | 0.0531 | 0.0545 | 0.0572 | 0.0607 | 0.0620 | 0.0636 | 0.0660 | 0.0689 | 0.0723 | 0.0810 | 44 |
| 20 | 0.0441 | 0.0462 | 0.0496 | 0.0531 | 0.0545 | 0.0572 | 0.0607 | 0.0648 | 0.0666 | 0.0693 | 0.0726 | 0.0763 | 0.0810 | 0.0912 | 45 |
| 21 | 0.0434 | 0.0469 | 0.0510 | 0.0545 | 0.0572 | 0.0607 | 0.0648 | 0.0696 | 0.0726 | 0.0762 | 0.0804 | 0.0855 | 0.0912 | 0.1031 | 46 |
| 22 | 0.0441 | 0.0476 | 0.0524 | 0.0572 | 0.0607 | 0.0648 | 0.0696 | 0.0759 | 0.0798 | 0.0844 | 0.0900 | 0.0963 | 0.1031 | 0.1161 | 47 |
| 23 | 0.0455 | 0.0498 | 0.0545 | 0.0607 | 0.0648 | 0.0696 | 0.0759 | 0.0834 | 0.0884 | 0.0945 | 0.1014 | 0.1088 | 0.1161 | 0.1301 | 48 |
| 24 | 0.0476 | 0.0524 | 0.0579 | 0.0648 | 0.0696 | 0.0759 | 0.0834 | 0.0924 | 0.0990 | 0.1064 | 0.1146 | 0.1225 | 0.1301 | 0.1458 | 49 |
| 25 | 0.0510 | 0.0565 | 0.0627 | 0.0696 | 0.0759 | 0.0834 | 0.0924 | 0.1035 | 0.1115 | 0.1203 | 0.1290 | 0.1373 | 0.1458 | 0.1620 | 50 |
| 26 | 0.0552 | 0.0614 | 0.0676 | 0.0759 | 0.0834 | 0.0924 | 0.1035 | 0.1168 | 0.1260 | 0.1354 | 0.1448 | 0.1539 | 0.1620 | 0.1809 | 51 |
| 27 | 0.0600 | 0.0676 | 0.0745 | 0.0834 | 0.0924 | 0.1035 | 0.1166 | 0.1317 | 0.1419 | 0.1518 | 0.1620 | 0.1710 | 0.1809 | 0.2019 | 52 |
| 28 | 0.0662 | 0.0745 | 0.0828 | 0.0924 | 0.1035 | 0.1166 | 0.1317 | 0.1483 | 0.1590 | 0.1701 | 0.1800 | 0.1909 | 0.2019 | 0.2282 | 53 |
| 29 | 0.0731 | 0.0828 | 0.0917 | 0.1035 | 0.1166 | 0.1317 | 0.1483 | 0.1662 | 0.1782 | 0.1890 | 0.2010 | 0.2131 | 0.2262 | 0.2484 | 54 |
| 30 | 0.0804 | 0.0910 | 0.1021 | 0.1166 | 0.1317 | 0.1483 | 0.1662 | 0.1863 | 0.1980 | 0.2110 | 0.2244 | 0.2388 | 0.2484 | 0.2727 | 55 |
| 31 | 0.0894 | 0.1003 | 0.1125 | 0.1294 | 0.1457 | 0.1633 | 0.1830 | 0.2034 | 0.2178 | 0.2329 | 0.2493 | 0.2610 | 0.2727 | 0.2997 | 56 |
| 32 | 0.0979 | 0.1098 | 0.1245 | 0.1431 | 0.1605 | 0.1798 | 0.1998 | 0.2231 | 0.2396 | 0.2579 | 0.2715 | 0.2854 | 0.2997 | 0.3300 | 57 |
| 33 | 0.1072 | 0.1216 | 0.1373 | 0.1576 | 0.1765 | 0.1960 | 0.2190 | 0.2445 | 0.2644 | 0.2798 | 0.2957 | 0.3123 | 0.3300 | 0.3631 | 58 |
| 34 | 0.1187 | 0.1341 | 0.1521 | 0.1733 | 0.1926 | 0.2150 | 0.2401 | 0.2689 | 0.2859 | 0.3036 | 0.3223 | 0.3425 | 0.3631 | 0.3982 | 59 |
| 35 | 0.1304 | 0.1480 | 0.1669 | 0.1890 | 0.2110 | 0.2336 | 0.2639 | 0.2898 | 0.3090 | 0.3296 | 0.3520 | 0.3752 | 0.3982 | 0.4353 | 60 |
| 36 | 0.1461 | 0.1658 | 0.1864 | 0.2110 | 0.2356 | 0.2639 | 0.2898 | 0.3181 | 0.3396 | 0.3630 | 0.3873 | 0.4115 | 0.4353 | 0.4711 | 61 |
| 37 | 0.1625 | 0.1845 | 0.2085 | 0.2356 | 0.2639 | 0.2898 | 0.3181 | 0.3496 | 0.3740 | 0.3994 | 0.4248 | 0.4498 | 0.4711 | 0.5062 | 62 |
| 38 | 0.1801 | 0.2060 | 0.2324 | 0.2639 | 0.2898 | 0.3181 | 0.3496 | 0.3850 | 0.4115 | 0.4380 | 0.4644 | 0.4868 | 0.5062 | 0.5406 | 63 |
| 39 | 0.1997 | 0.2299 | 0.2601 | 0.2898 | 0.3181 | 0.3496 | 0.3850 | 0.4236 | 0.4513 | 0.4789 | 0.5025 | 0.5231 | 0.5406 | 0.5757 | 64 |
| 40 | 0.2217 | 0.2570 | 0.2850 | 0.3181 | 0.3496 | 0.3850 | 0.4236 | 0.4646 | 0.4934 | 0.5182 | 0.5400 | 0.5566 | 0.5757 | 0.6142 | 65 |
| 41 | 0.2427 | 0.2808 | 0.3088 | 0.3463 | 0.3814 | 0.4166 | 0.4657 | 0.5082 | 0.5382 | 0.5647 | 0.5876 | 0.6090 | 0.6319 | 0.6551 | 66 |
| 42 | 0.2634 | 0.3051 | 0.3344 | 0.3777 | 0.4166 | 0.4657 | 0.5082 | 0.5362 | 0.5647 | 0.5876 | 0.6090 | 0.6319 | 0.6551 | 0.6707 | 67 |
| 43 | 0.2853 | 0.3320 | 0.3649 | 0.4115 | 0.4513 | 0.4994 | 0.5339 | 0.5737 | 0.5983 | 0.6215 | 0.6470 | 0.6756 | 0.7107 | 0.7742 | 68 |
| 44 | 0.3098 | 0.3605 | 0.3969 | 0.4469 | 0.4885 | 0.5287 | 0.5681 | 0.6067 | 0.6320 | 0.6592 | 0.6903 | 0.7281 | 0.7742 | 0.8478 | 69 |
| 45 | 0.3352 | 0.3907 | 0.4305 | 0.4837 | 0.5235 | 0.5625 | 0.6007 | 0.6397 | 0.6688 | 0.7020 | 0.7423 | 0.7914 | 0.8478 | 0.9315 | 70 |
| 46 | 0.3660 | 0.4260 | 0.4695 | 0.5235 | 0.5625 | 0.6007 | 0.6397 | 0.6825 | 0.7166 | 0.7581 | 0.8086 | 0.8566 | 0.9315 | 1.0226 | 71 |
| 47 | 0.3960 | 0.4612 | 0.5062 | 0.5625 | 0.6007 | 0.6397 | 0.6825 | 0.7312 | 0.7739 | 0.8258 | 0.8854 | 0.9522 | 1.0226 | 1.1211 | 72 |
| 48 | 0.4276 | 0.4950 | 0.5437 | 0.6007 | 0.6397 | 0.6825 | 0.7312 | 0.7897 | 0.8430 | 0.9043 | 0.9729 | 1.0463 | 1.1211 | 1.2271 | 73 |
| 49 | 0.4590 | 0.5302 | 0.5812 | 0.6397 | 0.6825 | 0.7312 | 0.7897 | 0.8602 | 0.9231 | 0.9936 | 1.0680 | 1.1460 | 1.2271 | 1.3419 | 74 |
| 50 | 0.4920 | 0.5665 | 0.6217 | 0.6825 | 0.7312 | 0.7897 | 0.8602 | 0.9420 | 1.0143 | 1.0908 | 1.1710 | 1.2544 | 1.3419 | 1.4681 | 75 |
| 51 | 0.5227 | 0.6036 | 0.6615 | 0.7239 | 0.7818 | 0.8516 | 0.9325 | 1.0246 | 1.1044 | 1.1884 | 1.2762 | 1.3687 | 1.4681 | 1.6038 | 76 |
| 52 | 0.5583 | 0.6438 | 0.7063 | 0.7739 | 0.8430 | 0.9231 | 1.0143 | 1.1135 | 1.2009 | 1.2925 | 1.3898 | 1.4942 | 1.6038 | 1.7712 | 77 |
| 53 | 0.5936 | 0.6889 | 0.7587 | 0.8344 | 0.9137 | 1.0039 | 1.1021 | 1.2083 | 1.3035 | 1.4045 | 1.5138 | 1.6287 | 1.7712 | 1.9507 | 78 |
| 54 | 0.6357 | 0.7401 | 0.8179 | 0.9043 | 0.9936 | 1.0908 | 1.1959 | 1.3089 | 1.4134 | 1.5268 | 1.6465 | 1.7948 | 1.9507 | 2.1471 | 79 |
| 55 | 0.6804 | 0.7958 | 0.8849 | 0.9832 | 1.0794 | 1.1834 | 1.2963 | 1.4184 | 1.5333 | 1.6572 | 1.8105 | 1.9724 | 2.1471 | 2.3564 | 80 |
| 56 | 0.7388 | 0.8685 | 0.9690 | 1.0794 | 1.1834 | 1.2953 | 1.4164 | 1.5496 | 1.6750 | 1.8302 | 1.9941 | 2.1710 | 2.3564 | 2.5724 | 81 |
| 57 | 0.8058 | 0.9483 | 1.0616 | 1.1834 | 1.2953 | 1.4164 | 1.5496 | 1.6929 | 1.8499 | 2.0157 | 2.1948 | 2.3826 | 2.5724 | 2.7911 | 82 |
| 58 | 0.8806 | 1.0381 | 1.1628 | 1.2953 | 1.4164 | 1.5496 | 1.6929 | 1.8696 | 2.0374 | 2.2167 | 2.4067 | 2.6010 | 2.7911 | 3.0138 | 83 |
| 59 | 0.9647 | 1.1357 | 1.2739 | 1.4164 | 1.5496 | 1.6929 | 1.8696 | 2.0591 | 2.2426 | 2.4349 | 2.6295 | 2.8221 | 3.0138 | 3.2636 | 84 |
| 60 | 1.0566 | 1.2447 | 1.3950 | 1.5496 | 1.6929 | 1.8696 | 2.0591 | 2.2664 | 2.4611 | 2.6581 | 2.8531 | 3.0473 | 3.2636 | 3.5680 | 85 |
| 61 | 1.1456 | 1.3479 | 1.5115 | 1.6750 | 1.8499 | 2.0374 | 2.2426 | 2.4611 | 2.6638 | 2.8655 | 3.0674 | 3.2926 | 3.5580 | 3.9555 | 86 |
| 62 | 1.2415 | 1.4605 | 1.6370 | 1.8302 | 2.0157 | 2.2187 | 2.4349 | 2.6581 | 2.8655 | 3.0741 | 3.3071 | 3.5916 | 3.9555 | 4.4563 | 87 |
| 63 | 1.3448 | 1.5807 | 1.7726 | 1.9941 | 2.1948 | 2.4087 | 2.6295 | 2.8531 | 3.0674 | 3.3071 | 3.5997 | 3.9730 | 4.4563 | 5.0922 | 88 |
| 64 | 1.4557 | 1.7096 | 1.9164 | 2.1710 | 2.3826 | 2.6010 | 2.8221 | 3.0473 | 3.2926 | 3.5918 | 3.9730 | 4.4682 | 5.0922 | 5.8644 | 89 |
| 65 | 1.5734 | 1.8474 | 2.0716 | 2.3564 | 2.5724 | 2.7911 | 3.0138 | 3.2636 | 3.5680 | 3.9555 | 4.4583 | 5.0922 | 5.8644 | 6.7682 | 90 |
| 66 | 1.7185 | 2.0189 | 2.2619 | 2.5724 | 2.7911 | 3.0138 | 3.2636 | 3.5680 | 3.9555 | 4.4563 | 5.0922 | 5.8644 | 6.7682 | 7.7996 | 91 |
| 67 | 1.8758 | 2.2005 | 2.4678 | 2.7911 | 3.0138 | 3.2636 | 3.5680 | 3.9555 | 4.4563 | 5.0922 | 5.8644 | 6.7682 | 7.7996 | 8.9525 | 92 |
| 68 | 2.0459 | 2.3996 | 2.6898 | 3.0138 | 3.2636 | 3.5680 | 3.9555 | 4.4563 | 5.0922 | 5.8644 | 6.7682 | 7.7996 | 8.9525 | 10.2181 | 93 |
| 69 | 2.2302 | 2.6149 | 2.9301 | 3.2636 | 3.5680 | 3.9555 | 4.4563 | 5.0922 | 5.8644 | 6.7682 | 7.7996 | 8.9525 | 10.2181 | 11.5661 | 94 |
| 70 | 2.4266 | 2.8478 | 3.1880 | 3.5680 | 3.9555 | 4.4563 | 5.0922 | 5.8644 | 6.7682 | 7.7996 | 8.9525 | 10.2181 | 11.5661 | 12.9701 | 95 |
| 71 | 2.6426 | 3.0982 | 3.4641 | 3.9555 | 4.4563 | 5.0922 | 5.8644 | 6.7682 | 7.7996 | 8.9525 | 10.2181 | 11.5661 | 12.9701 | 14.4004 | 96 |
| 72 | 2.8721 | 3.3682 | 3.7604 | 4.4563 | 5.0922 | 5.8644 | 6.7682 | 7.7996 | 8.9525 | 10.2181 | 11.5661 | 12.9701 | 14.4004 | 15.8274 | 97 |
| 73 | 3.3453 | 3.9123 | 4.3827 | 5.0922 | 5.8644 | 6.7682 | 7.7996 | 8.9525 | 10.2181 | 11.5661 | 12.9701 | 14.4004 | 15.8274 | 16.8844 | 98 |
| 74 | 3.8481 | 4.4968 | 5.0503 | 5.8644 | 6.7682 | 7.7996 | 8.9525 | 10.2181 | 11.5661 | 12.9701 | 14.4004 | 15.8274 | 16.8844 | 17.9155 | 99 |
| 75 | 4.4300 | 5.1752 | 5.8286 | 6.7682 | 7.7996 | 8.9525 | 10.2181 | 11.5661 | 12.9701 | 14.4004 | 15.8274 | 16.8844 | 17.9155 | | |
| 76 | 5.0861 | 5.9440 | 6.7128 | 7.7996 | 8.9525 | 10.2181 | 11.5661 | 12.9701 | 14.4004 | 15.8274 | 16.8844 | 17.9155 | | | |
| 77 | 5.8090 | 6.7959 | 7.6950 | 8.9525 | 10.2181 | 11.5661 | 12.9701 | 14.4004 | 15.8274 | 16.8844 | 17.9155 | | | | |
| 78 | 6.3477 | 7.6815 | 8.7702 | 10.2181 | 11.5661 | 12.9701 | 14.4004 | 15.8274 | 16.8844 | 17.9155 | | | | | |
| 79 | 6.7759 | 8.1982 | 9.3360 | 11.5661 | 12.9701 | 14.4004 | 15.8274 | 16.8844 | 17.9155 | | | | | | |
| 80 | 7.2165 | 8.7291 | 10.9560 | 12.9701 | 14.4004 | 15.8274 | 16.8844 | 17.9155 | | | | | | | |

**How to read this table:**
- Locate your issue age, found on your Policy Data Page, in the leftmost column.
- Then moving to the right, locate the column for your policy's current year.
- Example: If your issue age is 45 and your policy is in its 21st year, the monthly cost of insurance rate is 0.6688
- For policy years 26 and subsequent, the rate is to the left of your attained age.

* These rates are effective 11/1/2011 and will remain in effect through 12/31/2012. Any illustrations or projections of non-guaranteed values will use 105% of the cost of insurance rates shown above for projecting policy values beyond 12/31/2012. This approach is taken to facilitate illustrating hypothetical projected future policy values only and is not a declaration of cost of insurance rates beyond 12/31/2012.